**162 So. 790**

**SUCCESSION OF WATSON v. METROPOLI-TAN LIFE INS. CO.**

No. 33172.

Feb. 4, 1935.

On Rehearing July 1, 1935.

James N. Brittingham, Jr., of New Orleans, for applicant Albert W. Newlin.

Spencer, Gidiere, Phelps & Dunbar and Louis B. Claverie, all of New Orleans, for respondent.

Edward Dinkelspiel, H. M. Wilkinson, A. M. Coe, Fred W. Oser, Harry Nowalsky, George M. Leppert, Eugene J. McGivney, S. S. Goldman, and Charles J. Rivet, all of New Orleans, amici curiæ.

ROGERS, Justice.

On April 28, 1924, the Metropolitan Life Insurance Company issued to Frank Watson an industrial life insurance policy for $164. On April 20, 1925, the insurance company issued another policy to Watson for $820. Both policies provided for weekly premiums, which were regularly paid until November 14, 1932, when the payments ceased and the policies lapsed. Frank Watson, the insured, died on April 13, 1933, and his succession was opened in the civil district court for the parish of Orleans. Albert W. Newlin, public administrator, qualified as administrator of the succession, and as such administrator brought this suit against the Metropolitan Life Insurance Company to recover the face value of the two policies issued by the defendant insurance company on the life of the deceased.

The district court rendered judgment in plaintiff's favor for $984, the full amount of the policies. The Court of Appeal amended the judgment by reducing the amount of plaintiff's recovery to $122. The case comes before us on certiorari for review of the judgment of the appellate court.

The defendant insurance company urged several defenses to plaintiff's action in the district and appellate courts. But in this court only two of these defenses are relied on to defeat plaintiff's suit. They are that Act No. 193 of 1906, on which plaintiff's action is predicated, is not applicable to industrial life insurance; and that, if applicable, the statute is satisfied by the terms of the insurance contract providing for paid-up insurance on the lapsing of the policies for nonpayment of the premiums.

The defendant insurance company contends that Act No. 193 of 1906 does not apply to industrial life insurance, because the statute makes no reference to such insurance, which is authorized, defined, and regulated by Act No. 65 of 1906, section 7 of which provides that: "No law, hereafter passed, shall be held or deemed to refer to the business of industrial life insurance unless the same is expressly referred to in said law."

But the question involved in the contention was settled by the decision of this court in McBride v. Acme Industrial Life Insurance Society, 179 La. 701, 154 So. 741, where it was held that, notwithstanding section 7 of Act No. 65 of 1906, the general laws of the state relating to life, health, and accident insurance are applicable to industrial life insurance.

Act No. 193 of 1906 is a general law under the provisions of which life insurance policies become nonforfeitable for nonpayment of premiums after three years' premiums have been paid. Under the decision in the McBride Case, the statute is applicable to the business of industrial life insurance, although that business is not specifically referred to therein. The question involved in this case is not different from the one involved in the McBride Case, because Act No. 193 of 1906 was enacted by the same Legislature which had previously enacted Act No. 65 of 1906. The legal principle governing both cases is the same. As correctly stated by the Court of Appeal in its opinion herein, the reasoning in the McBride Case is applicable "not only to enactments of subsequent Legislatures, but also to laws passed by the same Legislature which enacted the original statute which prohibits the application to industrial life insurance of subsequent enactments which do not expressly refer to such business."

Section 1 of Act No. 193 of 1906 makes life insurance policies nonforfeitable for nonpayment of premiums after three years' premiums have been paid. Section 2 of the statute provides that, where such a policy lapses, "The reserve on such policy computed according to the standard adopted by said company, together with the value of any dividend additions upon said policy, after deducting any indebtedness to the company and one-fifth of the said entire reserve, shall upon demand with surrender of the policy be applied as a surrender value as agreed upon in the policy, provided that if no other option expressed in the policy be availed of by the owner thereof, the same without any further act on the part of the owner of the policy, shall be applied to continue the insurance in force at its full amount * * * so long as such surrender value will purchase non-participating temporary insurance, * * * and provided further that any value allowed in lieu thereof shall be at least equal to the net value of the temporary insurance * * * herein provided." The same section of the statute also provides: "That any attempted waiver of the provisions of this paragraph [section] in any application, policy or otherwise, shall be void."

When the policies were issued by the defendant insurance company to the deceased, Frank Watson, they contained the following nonforfeiture clause, viz.: "After premiums upon this policy have been fully paid for the respective periods named in the table below, then in case of default in the payment of any subsequent premium the company, will, without ac-

tion on the part of the holder, continue this policy as a nonparticipating Free Policy, payable on the same conditions as this policy but upon which no further payment of premiums shall be required, for a reduced amount in accordance with the following table, but any indebtedness to the company hereon if not repaid, will reduce such amount in the proportion which the indebtedness bears to the amount of surrender value used as a single premium in calculating the values appearing in the table." The policies also contained a table by which the value of nonparticipating insurance might be determined according to the insured's age at time of issuance, the number of years they were in force, and the amount of the premiums.

It is admitted that the policies involved in this suit were in force for more than three years and for less than ten years and had lapsed because of nonpayment of the premiums prior to the death of the insured. It is also admitted that on the lapsing of the policies the insured did nothing. He neither availed himself of the surrender value nor exercised the option for the paid-up value as provided in the policies.

Plaintiff contends that under the provisions of Act No. 193 of 1906 the reserves accumulated on the policies must be applied to the purchase of extended insurance. Defendant contends that under the terms of the policies the reserves must be applied to the purchase of paid-up insurance. The extended insurance, which plaintiff claims, is the face value of the policies for the period which the reserves purchased. The paid-up insurance, which defendant claims is the extent of its liability, is the coverage which the reserves would purchase for the remainder of the insured's life. Both kinds of insurance are purchasable out of the same reserve.

The Court of Appeal upheld defendant's contention and limited plaintiff's recovery to the amount of paid-up insurance purchased by the accumulated reserves in accordance with the table contained in the policies. We are unable to affirm the judgment.

Among the above-quoted provisions of section 2 of Act No. 193 of 1906 appears the following, viz.: "The reserve * * * shall upon demand with surrender of the policy be applied as a surrender value as agreed upon in the policy, provided that if no other option expressed in the policy be availed of by the owner thereof, the same [reserve] * * * shall be applied to continue the insurance in force at its full amount."

We do not find anything in the statutory provision which shows that the legislative intention was that an insurance company may require the insured to agree in advance to the benefit he shall be entitled to if the policy lapses after the payment of three years' premiums. On the contrary, we think that the language used indicates that the Legislature intended to grant the insured the privilege of selecting one of the three well-recognized and usu-

ally agreed upon ways of applying a surrender value. Those ways are set forth by the Court of Appeal as follows, viz.: (1) By paying in cash; (2) by using it to extend the full policy for a short term; (3) by using it to purchase a small amount of fully paid insurance.

If this were not so, an insured permitting his policy to lapse after the payment of three years' premiums could obtain neither a cash surrender value nor an extended value, as he would be obligated from the moment of the issuance of the policy to accept a paid-up value. There would be no necessity for a demand and surrender of the policy by the insured, and the proviso, "that if no other option expressed in the policy be availed of by the owner thereof, the same (reserve) shall be applied to continue the insurance in force at its full amount," would be meaningless.

The obvious purpose of Act No. 193 of 1906 is to prevent life insurance companies from inserting in their policies conditions of forfeiture or restrictions, except those which the statute itself allows. Equitable Life Assur. Society v. Pettus, 140 U. S. 226, 11 S. Ct. 822, 35 L. Ed. 497.

While the statute not only permits the insured on his demand to make a new bargain with the company at the time he surrenders the policy, it goes further and actually makes the bargain for the insured in the event he fails to avail himself of the permission by providing that "the re-serve * * * shall be applied to continue the insurance in force at its full amount."

The words appearing in the proviso, "no other option expressed in the policy" clearly show that the Legislature had in mind more than one way of applying a surrender value to be specified in the policy. As hereinabove stated, the three ways or options of applying a surrender value contained in life policies are surrendering the policy for cash, accepting a paid-up policy or obtaining extended insurance.

The statute expressly commands that the insured be given the option in the policy of selecting extended insurance when it unequivocally declares that in the event the insured fails to avail himself of any of the other options agreed upon in the policy, the reserve "shall be applied to continue the insurance in force at its full amount." And clearly the other options contemplated by the Legislature as being agreed on in the policy are the options of securing cash or accepting a paid-up policy which are always embodied in life policies in association with the option of selecting extended insurance. In fact, in Darby v. Equitable Life Assur. Society, 143 La. 757, 79 So. 329, it was held that under Act No. 193 of 1906, life insurance policies which are nonforfeitable after they have been in force for three years have a cash or surrender value.

Our conclusion is that the plaintiff cannot be compelled to accept paid-up insur-

ance as provided in the policy. Act No. 193 of 1906 was dictated by public policy. It was enacted to protect the insured. It expressly prohibits him from waiving in any application, policy, or otherwise any of the provisions of section 2. The statute is mandatory and its provisions control the provisions of the policy. To fully protect the insured its provisions must be interpreted so as to give him his choice of benefits at the time the policy lapses.

For the reasons assigned, the judgment of the Court of Appeal is annulled and the judgment of the civil district court is reinstated and made the final judgment of this court; all costs of suit are to be paid by the defendant insurance company.

HIGGINS, J., recused.

## On Rehearing.

BRUNOT, Justice.

This case is fully and accurately stated in our original opinion; hence, it is not necessary to restate it.

The plaintiff in this suit is the public administrator, properly qualified as administrator of the succession of Frank Watson, deceased, the insured.

Counsel, in argument and brief, present two issues to this court, viz.: Is Act No. 193 of 1906 applicable to industrial life insurance? If it is, is section 2 of the act mandatory and controlling, regardless of the conflicting terms of the insurance contract?

On the authority of McBride v. Acme Industrial Life Insurance Society, 179 La. 701, 154 So. 741, we disposed of the first issue by holding that Act No. 193 of 1906 is applicable to industrial life insurance, and we disposed of the second issue by holding in our original opinion herein that section 2 of the act is mandatory, and conflicting terms of the insurance contract must give way to the mandatory provisions of the act. In so holding, we said, in the last paragraph of our reasons for judgment, the following: "Our conclusion is that the plaintiff cannot be compelled to accept paid up insurance as provided in the policy. Act No. 193 of 1906 was dictated by public policy. It was enacted to protect the insured. It expressly prohibits him from waiving in any application, policy or otherwise any of the provisions of section 2. The statute is mandatory and its provisions control the provisions of the policy. To fully protect the insured its provisions must be interpreted so as to give him his choice of benefits at the time the policy lapses."

Section 2 of the act provides that in the event the insured does not exercise his choice of benefits, at the time the policy lapses, the accumulated reserve, when the policy has been in force for more than three years and has lapsed for nonpayment of the premiums due thereon, must be applied to the purchase of extended insurance.

We have carefully reviewed the McBride Case, and we find that the reasons

assigned in the opinion handed down therein by Justice Odom, the organ of the court, and the court's conclusion that Act No. 193 of 1906 is applicable to industrial life insurance, are sound and should be adhered to.

For the reasons stated, our original opinion and decree are reinstated and made the final judgment of the court.

O'NIELL, C. J., dissents and hands down an opinion.

FOURNET, J., concurs.

HIGGINS, J., recused.

ROGERS, Justice (concurring on rehearing).

I do not see how it can be successfully contended that the insurance contract herein sought to be enforced does not come within the terms of Act No. 193 of 1906.

It is admitted that the defendant is a legal reserve life insurance company and that under their terms reserves have accumulated on the policies.

Act No. 193 of 1906 applies to all legal reserve companies and to all legal reserve policies issued by such companies. The statute was enacted to prevent the forfeiture of the reserve and to compel its application for the use and benefit of the insured to whom it belongs. If it were not for the existence of the statute, insurance companies could forfeit the reserves accumulated on the policies to their great pecuniary advantage at the expense of the policyholders.

One of the policies herein sued on has a face value of $820. Obviously, such a policy cannot be classed as an industrial policy. The other policy sued on has a face value of less than $500, but it is similar in form and in all its terms to the larger policy. Both policies provide for the accumulation and nonforfeiture of a reserve.

From all of which it is clear that the policies herein sued on are legal reserve policies issued by a legal reserve company, and, hence, they fall within the terms of Act No. 193 of 1906.

Section 1 of Act No. 193 of 1906 provides that policies issued by legal reserve life insurance companies shall contain a stipulation that "after three full annual premiums have been paid thereon" they shall not lapse or become forfeited for nonpayment of the premium thereafter," etc. And it is argued on behalf of the respondent insurance company that the use of the word "annual" limits the application of the statute to insurance policies on which the premiums are paid annually or on an annual basis and not to policies on which the premiums are paid weekly or on a weekly basis.

It seems to me, however, that the expression "three full annual premiums" may be applied to any policy on which three full years of premiums have been

paid. The title of the act declares its purpose to be to make "life insurance policies * * * non-forfeitable * * * after three years premiums have been paid." And section 2 of the statute declares that: "No policy * * *. after being in force three full years shall by its terms lapse." The policies themselves, tracking the statute, stipulate for their non-forfeiture "after premiums for three full years have been paid."

The expression in the statute, "three full annual premiums," means, I take it, that the payment of premiums has been completed for three years, or as set forth in another expression contained in the statute the policies have been "in force three full years." The policies herein sued on have been "in force three full years," as required by the statute, and "premiums for three full years have been paid" thereon, as required by both the statute and the policies themselves.

As pointed out in our original opinion herein, Act No. 193 of 1906, § 2, provides that, "if no other option expressed in the policy be availed of by the owner thereof," etc., extended insurance must be allowed. It is an inescapable conclusion therefore that the right to choose extended insurance is itself an "option" which must be "expressed in the policy." Otherwise, the word "other" appearing in the statute would be wholly meaningless. If the legislative intention were that the right to select extended insurance was not to

be "an option expressed in the policy," such intention could have been easily manifested by omitting the word "other" from the statute and by simply providing that "if no option expressed in the policy be availed of by the owner," etc., the policy will be continued on an extended basis.

Therefore, the right to choose extended insurance being an option guaranteed to the insured by the statute, it would seem to be plain that the insurance contracts herein which destroy the insured's right of choice ab initio do not fulfill the statutory guarantee of an "option expressed in the policy."

What I have hereinabove said also applies to the companion cases of Thomas v. Metropolitan Life Insurance Company, 183 La. 53, 162 So. 799; Williams v. National Life & Accident Insurance Company, 183 La. 64, 162 So. 803; Crump v. Metropolitan Life Insurance Company, 183 La. 55, 162 So. 800; Cryer v. National Life & Accident Insurance Company, 183 La. 67, 162 So. 804; and Foley v. National Life & Accident Insurance Company, 183 La. 49, 162 So. 798.

O'NIELL, Chief Justice (dissenting on rehearing).

My opinion is that Act No. 193 of 1906 is not applicable to the business of industrial life insurance, and that the court has misconstrued the statute in its application to legal reserve life insurance.

The opinion that Act No. 193 of 1906 is not applicable to the business of industrial life insurance is not founded merely upon the seventh section of Act No. 65 of 1906, which provides: "That no law, hereafter passed, shall be held or deemed to refer to the business of industrial life insurance unless the same is expressly referred to in said law." Notwithstanding this section, it was held in McBride v. Acme Industrial Life Insurance Soc., 179 La. 701, 154 So. 741, 742, that the laws relating generally to life insurance (specifically Act No. 97 of 1908 and Act No. 227 of 1916), and not repugnant to the provisions of Act No. 65 of 1906, were applicable to industrial life insurance. That decision was founded largely upon a provision in the second section of Act No. 65 of 1906, to the effect that all companies or associations carrying on the business of industrial life insurance should be "subject to this Act and all the other laws of this State, not repugnant to this Act, regulating the business of life, health and accident insurance in this State."

McBride v. Acme Industrial Life Insurance Soc., is authority for the proposition only that the Legislature may enact a law which shall by its terms or by necessary implication be applicable to industrial life insurance, without its being "expressly referred to in said law." But the McBride Case is not authority for the proposition that *all* laws relating to life insurance generally are, essentially, applicable to industrial life insurance. The ruling made in that case did not deny the fundamental rule of statutory construction, that a statute shall not be construed in a way in which the Legislature did not intend it to be construed.

I am convinced by the language of Act No. 193 of 1906 itself, and by the circumstances surrounding the adopting of the two statutes at the same session of the Legislature, Act No. 65 dealing exclusively with the business of industrial life insurance and Act No. 193 dealing exclusively with the business of the old line legal reserve life insurance companies, that the provisions of Act No. 193 of 1906 are not applicable or appropriate to the business of industrial life insurance. It is pointed out in the brief of one of the amici curiæ in this case that Act No. 65, which was House Bill 79, and Act No. 193, which was introduced as House Bill 82 and became H. B. 367, were introduced on the same day and by the same member of the House of Representatives, and were referred to the same committee, committee on life insurance, on the same day, and were reported on the same day; H. B. 79 being "Reported favorably with amendments," and H. B. 82 being "Reported by substitute"; the substitute being H. B. 367, which was adopted as Act No. 193 of 1906. It seems impossible that the committee on life insurance, dealing with the two bills at the same time, could have overlooked the section of H. B. 79 (Act No. 65 of 1906) which required that if the Legislature intended that H. B. 82 or the

substitute bill (Act No. 193 of 1906) should "be held or deemed to refer to the business of industrial life insurance" the same should be "expressly referred to in said law." The Legislature at any subsequent session might have overlooked the provision in section 7 of Act No. 65 of 1906, that no law should be held or deemed to refer to the business of industrial life insurance unless the same was expressly referred to in said law; but I do not believe that the members of the committee on life insurance, in the session of the Legislature of 1906, overlooked the requirement in Act No. 65 of that session, that if Act No. 193 of the same session was intended to refer to the business of industrial life insurance, "the same" would have to be "expressly referred to in said law." It is a matter of no importance in this discussion that it has been decided (in the McBride Case) that this provision in section 7 of Act No. 65 of 1906 is without effect. The members of the Legislature, in the session of 1906, and particularly the members of the committee on life insurance, did not know that section 7 of Act No. 65 of 1906 would be declared to be of no force or effect.

The language of Act No. 193 of 1906 itself shows that it is not applicable or appropriate to industrial life insurance. That class of insurance was unknown in Louisiana until the Legislature adopted Act No. 65 of 1906, defining and regulating industrial life insurance. It is defined in the first section of the act as that class of insurance for which the stipulated premiums, advance assessments, or dues are payable regularly every four weeks, or triweekly, biweekly, weekly, semiweekly, or at any other stated term, less than a month apart, and the policies or benefit certificates for which are for $500 or less on a life, on which policies or benefit certificates provide a weekly cash benefit for disability, caused by sickness or accident, of $20 per week or less, or which provide for the attendance of a physician or the supplying of drugs, or furnishing a funeral. The life insurance companies organized under the legal reserve laws were not engaged in the industrial life insurance business in this state at the time when Act No. 65 and Act No. 193 of 1906 were adopted. For that reason, it seems plain that, when the Legislature defined the kind of insurance policies that were to be governed by the provisions of Act No. 193, as being policies issued by companies "organized under the legal reserve laws of this State, or of any other State" (section 1), the Legislature could not have been referring to industrial life insurance policies. Besides, Act No. 193 declares that every policy issued by a company, organized under the legal reserve laws shall contain a stipulation that *after three full annual premiums have been paid thereon* it shall not lapse or become forfeited for nonpayment of the premium thereafter, etc. Inasmuch as a life insurance policy, in order to be within the definition of an industrial life insurance policy, must be

one on which the premiums or dues or assessments are payable at stated terms less than a month apart, the expression "after three full annual premiums have been paid thereon" (section 1) is not applicable or appropriate to an industrial life insurance policy. The premiums on all old line legal reserve life insurance policies are, and always have been, payable annually, or semiannually, or quarterly. By judicial interpretation, therefore, the expression "after three full annual premiums have been paid thereon" would mean six semiannual premiums, or twelve quarterly premiums, as well as three full annual premiums; but it cannot have reference to a class of policies on which there cannot be such a thing as an annual premium.

Some of the old line legal reserve companies are now engaged also in the business of industrial life insurance. In fact the Metropolitan Life Insurance Company, defendant in this suit, is a legal reserve company. When such companies write an industrial life insurance policy containing a stipulation that after a stated number of premiums have been paid the policy shall not lapse or be forfeited for nonpayment of a premium, and that the policy then "shall have a surrender value as agreed upon in the policy," or that the reserve on the policy shall be applied to the continuance of the policy for the full amount thereof, or to paid-up insurance for such amount as the reserve will pay for, the contract is a valid one, but is not

governed by Act No. 193 of 1906. In other words, this statute neither compels nor forbids a stipulation for a cash surrender value, or for an option in favor of the policyholder to receive the cash surrender value in the form of either paid-up insurance or extended insurance, in the writing of industrial life insurance policies. Hence, when such a stipulation is made in such a policy it is the contract, and not the Act No. 193 of 1906, which determines the rights of the contracting parties. But the fact that an industrial life insurance policy (as defined by Act No. 65 of 1906) is written by an old line legal reserve life insurance company does not change the character of the policy, or require that it shall be written in conformity with the provisions of Act No. 193 of 1906. Nor does the writing of a legal reserve stipulation in an industrial life insurance policy subject the policy contract to all of the requirements of Act No. 193 of 1906.

Putting aside now the question whether Act No. 193 of 1906 is applicable to the business of industrial life insurance, I respectfully submit that the statute does not forbid the parties to a contract of life insurance to stipulate in the policy that, if there is a lapse in the payment of the premiums after the policy has been in force three years, the surrender value, measured by the reserve, shall be applied in a certain way, as agreed upon in the policy; i. e., either that the surrender value shall be paid in cash, or that it shall be applied to the payment of paid-up in-

surance for the amount which the surrender value of the policy will pay for, or that it shall be applied to the payment for extended insurance, for the full amount of the policy, for as long an extension as the surrender value of the policy will pay for. The prevailing opinion in this case, and in the five companion cases that are being decided today, is that section 2 of Act No. 193 of 1906 compels the insurance company to give the insured the three options, and forbids the insured to waive his right to the three options, viz., to receive the surrender value of the policy (1) in cash, (2) in paid up insurance for the reduced amount, or (3) in extended insurance for the full amount of the policy. That is not my interpretation of the second section of the statute. It provides, first, that after a policy has been in force three years it shall not be forfeited for nonpayment of any premium. That provision merely guarantees to the insured the surrender value of the policy, measured by the legal reserve. The statute declares further that the reserve on the policy shall be applied as a surrender value, *as agreed upon in the policy;* and that, if no other option expressed in the policy, as to how the reserve shall be applied as a surrender value, is availed of by the owner of the policy, the reserve shall be applied to continuing the insurance in force for as long a period as the surrender value will pay for. That provision of the law serves merely to extend the insurance automatically when the policy contract allows the insured an option as to how the reserve shall be applied and he fails to avail himself of the option. But the statute does not require that the policy contract shall allow the insured an option as to how the reserve shall be applied as a surrender value. On the contrary, the statute (section 2) declares: "The reserve on such policy computed according to the standard adopted by said company, together with the value of any dividend additions upon said policy, after deducting any indebtedness to the company and one-fifth of the said entire reserve, shall upon demand with surrender of the policy be applied as a surrender value *as agreed upon in the policy."* (I supplied the italics.) Then comes the proviso, to take care of a failure of the insured to avail himself of an option, if an option is given in the policy, as to how the reserve shall be applied as a surrender value. And, finally, comes the proviso, "that any value allowed in lieu thereof [meaning in lieu of the extended or temporary insurance] shall be at least equal to the net value of the temporary insurance." That means that a payment of the surrender value in cash, or in paid-up insurance, may be agreed upon in the policy, in lieu of the temporary or extended insurance, provided that any such value that may be agreed upon in the policy shall be *at least* equal to the net value of the temporary or extended insurance. All of which is in amplification of the declaration: "The reserve on such policy * * * shall * * * be applied as a

surrender value as agreed upon in the policy."

For these reasons I respectfully dissent from the prevailing opinion, and the decree rendered in this case and in the companion cases, namely, Ernestine Thomas v. Metropolitan Life Insurance Company, 183 La. 53, 162 So. 799; Erline Williams v. National Life & Accident Insurance Company, 183 La. 64, 162 So. 803; Julia Crump, Widow of Miles v. Metropolitan Life Insurance Company, 183 La. 55, 162 So. 800; Olivia Cryer v. National Life & Accident Insurance Company, 183 La. 67, 162 So. 804; and Charlotte Foley v. National Life & Accident Insurance Company, 183 La. 49, 162 So. 798.