Rosen, Kammer, Wolff & Farrar, of New Orleans, for appellee.

BRUNOT, Justice.

This is a suit on an oral contract. The appeal is from a judgment maintaining the defendant's exception of no cause of action and dismissing the plaintiff's suit at his cost.

The petition alleges that, after ten years of service as an employee of the defendant, the latter discharged him, without cause, and he is, therefore, entitled to recover from the defendant the sum of $63,628, based on his life expectancy, together with legal interest thereon from judicial demand until paid, and the costs of the suit. The prayer of plaintiff is for judgment for the sum, interest, and costs sued for.

The suit is based on an alleged lifetime contract with the defendant as a meter tester for defendant, it being agreed that the term "life employment" means continuous employment as long as the plaintiff performs his work in an efficient and proper manner.

The defendant's exception of no cause of action is based upon the prohibition contained in Civ.Code art. 167. We quote the article:

"Persons who have attained the age of majority can not bind themselves for a longer term than five years."

The reasons for the prohibition have been considered and adopted by this court too often to be again repeated. In the case of Pitcher v. United Oil & Gas Syndicate, Inc., 174 La. 66, 139 So. 760, this court held, quoting from the syllabus, as follows:

"Contract for employment as long as master is operating, without other consideration from servant than services to be rendered, held for indefinite period, terminable at will of either party."

The plaintiff contends that he surrendered a lucrative position in California to accept employment with the defendant during a strike of certain of its employees, and, by reason of the surrender of such position, he was not an ordinary employee, but the holder of an option, for consideration, and therefore entitled to hold his position with the defendant company to the termination of his lifetime contract.

██ It is pertinent to ask, in this connection, what consideration, if any, did the defendant receive from the plaintiff beyond the service the plaintiff rendered it while in its employ. The record shows none; hence the status of plaintiff remains that of a person over the age of majority who is suing upon a contract for a lifetime employment. To a suit on a prohibited contract the exception of no cause of action is a proper defense, and the judgment maintaining the exception filed herein and dismissing this suit is correct.

For the reasons assigned the judgment appealed from is affirmed, at appellant's cost.

## SMITH v. LIBERTY INDUSTRIAL LIFE INS. CO., Inc.*

No. 16147.

Court of Appeal of Louisiana. Orleans.
April 6, 1936.

---

*Rehearing denied May 4, 1936.

Loys Charbonnet and E. B. Charbonnet, Jr., both of New Orleans, for appellant.

John T. Charbonnet, of New Orleans, for appellee.

McCALEB, Judge.

Lue Ethel Smith, widow of Thomas Smith, brings this suit as beneficiary on a policy of industrial life insurance issued by the defendant insuring the life of her deceased husband for the sum of $500.

The undisputed facts of the case are as follows:

On March 4, 1929, the defendant issued its policy No. 83–D insuring the life of plaintiff's deceased husband, the plaintiff being the beneficiary in said policy, in consideration of a monthly premium of $1.60. All premiums were paid up to the month of September, 1932. Under the terms of the policy, the insured was allowed a 4-week grace period within which to pay premiums, so that the failure to pay the premium for the Month of September, 1932, did not have the effect of lapsing the policy until October 1, 1932.

■ The insured failed to pay the premium on October 1, 1932, and the policy lapsed as of that day. The policy having been in force for 3 years before the lapse, the defendant company was unable to exercise a right of forfeiture, but, by reason of the provisions of Act No. 193 of 1906, § 2, as amended by Act No. 57 of 1932, § 1, was required to use the accumulated reserve for the purchase of extended insurance. Moreover, the policy, in effect, provides that, after the insurance is in force for 3 years, it shall not be forfeited for the nonpayment of premiums, and that the insured has the option of claiming the surrender value, paid-up insurance, or extended insurance. It is conceded that the assured did not exercise any of the options contained in the policy contract, and that, by virtue of this fact, coverage under the policy was extended by the terms thereof for a period of 1 year and 9 months from the date on which it lapsed, or, from September 1, 1932, until June 1, 1934. It is also not disputed that the insured died on November 1, 1933.

While the defendant company admits the foregoing facts, it contends that during the Month of August, 1933, one of its agents, through negotiations with the insured and the plaintiff, induced the plaintiff to surrender the policy No. 83–D for cancellation in consideration of the issuance of a new policy, No. 6278–D, on the life of the insured for the principal sum of $300. It is said that the particular consideration inuring to the insured by virtue of this exchange was that the insured was issued a new policy without expense to him for the first month's premium of $1.05.

Counsel for defendant company frankly admits in argument here that while it now appears, because of the ensuing death of the insured, that the beneficiary made an unprofitable trade, he contends that this result would not necessarily follow had the insured lived beyond the time when the extended insurance would have terminated. He claims that there is no evidence of fraud or deception on the part of defendant company, and that the plaintiff made the deal with her eyes open and that the court has not the right to set aside a valid agreement, in the absence of error or deceit.

■ However, it is unnecessary for us to consider the evidence relating to the acts of fraud and misrepresentations of the defendant company, because the decision may be placed upon another ground.

Section 2 of Act No. 193 of 1906, as amended, provides:

"No policy of life or endowment insurance (other than a term policy for twenty years or less) issued by any legal reserve life insurance company on or after January first, nineteen hundred and seven, after being in force three full years shall by its terms lapse or become forfeited by the non-payment of any premium, or of any note therefor, or of any loan on such policy, or of any interest on such note or loan. The reserve on such policy computed according to the standard adopted by said company, together with the value of any dividend additions upon said policy, after deducting any indebtedness to the company, and after deducting one-fifth of the said entire reserve or the sum of two and fifty one-hundredths dollars for each one hundred dollars of the face of said policy, if said sum shall be more than the said one-fifth, shall upon demand, with surrender of the policy, be applied as a surrender value as agreed upon in the policy; provided that, if no other option expressed in the policy be availed of by the owner thereof, the same, without any further act on the part of the owner of the policy, shall be applied either to purchase

upon the same life, at the attained age, paid-up insurance, payable at the same time, and under the same conditions, except as to the payment of premiums, as the original policy, or to continue the insurance in force at its full amount, including any outstanding dividend additions, less any outstanding indebtedness on the policy, so long as such surrender value will purchase non-participating temporary insurance at net single premium rates by the standard adopted by the company, at the age of the insured at the time of lapse or forfeiture, provided that, in case of any endowment policy, if the sum applicable to the purchase of temporary insurance be more than sufficient to continue the insurance to the end of the endowment term named in the policy, the excess shall be used to purchase, in the same manner, pure endowment insurance, payable at the end of the endowment term named in the policy on the conditions on which the original policy was issued; *and provided, further, that any attempted waiver of the provisions of this paragraph in any application, policy or otherwise, shall be void, and that any value allowed in lieu thereof shall be at least equal to the net value of temporary insurance or of the temporary and pure endowment insurance herein provided for.* The term of temporary insurance herein provided for shall include the period of grace, if any."

And in Succession of Watson v. Metropolitan Life Ins. Co., 183 La. 25, 162 So. 790, it was held that this act applies to industrial life insurance policies.

It will be observed that, as provided in the clause which we have italicized above, the defendant company is prohibited from attempting to waive the provisions of law, and that any value which it allows to the insured in lieu of the requirements of the act shall be at least equal to the net value of the temporary insurance. Applying this statute to the facts of the case at bar, we find the following:

In the Month of August, 1933, when the agent for the defendant company induced the plaintiff to surrender the policy No. 83-D for cancellation, the extended insurance would not have expired until 9 months thereafter. The premium of the policy was $1.60 per month, so that the policy at that time had a coverage value of $14.40 in respect of premiums, as distinguished from the surrender value, which had been waived by the insured's failure to exercise the option afforded him at the time the policy lapsed. Now, in consideration of this coverage value of $14.40 under the policy, which granted a benefit of $500 in case of death, the defendant insurance company gave to the plaintiff a value amounting to $1.05, represented by a free premium on a new policy which contained a death benefit for only $300. By its action the defendant company violated the mandate of the law, for the statute specifically prohibits any attempted waiver of the provisions relating to extended insurance, and further forbids the exchange of values allowed to the insured, unless the thing given be at least equal to the net value of the extended insurance.

It has long been the public policy of this state to prevent insurance companies from making unconscionable bargains with their policyholders. The evidence in this case leads to the irresistible conclusion that the defendant's agent cajoled the plaintiff into an agreement which was not only to her distinct disadvantage, but also prohibited by statute.

The district judge found for the plaintiff, and we agree with his conclusion.

For the reasons assigned, the judgment is affirmed.

Affirmed.

JANVIER, Judge.

I concur in the result, believing that the beneficiary or the insured was improperly imposed upon.