## LAMANA–PANNO–FALLO INDUSTRIAL INS. CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10176.

Circuit Court of Appeals, Fifth Circuit.

April 6, 1942.

Judgment reversed and cause remanded with directions.

Ed. J. DeVerges, of New Orleans, La., for petitioner.

Warren F. Wattles and J. Louis Monarch, Sp. Assts. to Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Charles E. Lowery, Sp. Atty., both of Washington, D. C., Bureau of Internal Revenue, for respondent.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

The petitioner seeks review of a decision of the Board of Tax Appeals which upheld the Commissioner in deciding that for the calendar years 1936 and 1937 petitioner was not entitled to the favorable income tax treatment given life insurance companies under Sections 201–203 of the Revenue Act of 1936; and in taxing it under Section 204, 26 U.S.C.A. Int.Rev.Acts, pages

898–899, and page 900. The decision is defended on the ground that the reserves held by petitioner against its policies were not those "required by law", as mentioned in Section 203, and in Regulation 94, Art. 203 (a) (2)-1, because not large enough.

According to the undisputed testimony of the Assistant Attorney General of Louisiana assigned to the office of the Secretary of State (the Secretary of State being ex-officio Insurance Commissioner), companies, like the petitioner, incorporated to do an industrial insurance business, were not prior to 1935 considered to be under the reserve requirements applicable to other life insurance companies, and did not set apart such reserves; but in that year the Supreme Court of Louisiana[1] held the industrial companies subject to the same laws in this respect as other life insurance companies. The industrial companies did not have assets sufficient to set up full reserves to cover their outstanding policies, and if such were requisite, the Secretary of State must in 1936 have denied them certificates to do business and must have put them all into receivership. He decided he had discretion as to the amount of reserves necessary, and required that they set apart forty percent of the full actuarial reserve proper to their policies in 1936, fifty percent in 1937, and ten percent more each year till a reserve of one hundred percent was accumulated. This was a rule and regulation of the Secretary to which these companies were required to adhere, a procedure followed and understood, and necessary to be complied with in order to get a certificate to do business. The petitioner did set apart forty percent of the actuarial reserve thus required for its policies in 1936, and fifty percent in 1937, and for each year received from the Secretary of State a certificate that it "has complied with all the requirements of the laws of this State applicable to said Company * * * and is authorized to transact its appropriate business of industrial life insurance in this State. * * *" There is in fact no statute of Louisiana which expressly says that the Secretary of State in making his annual examination of the condition of life insurance companies shall require reserves of one hundred per cent, though the basis of computing the reserves is stated.

We are of opinion that the Revenue Act, and Regulation 94 construing it, do not concern themselves with the sufficiency, but only with the character of the reserves of insurance companies. It is not the function of the Commissioner to review the decision of the State insurance department as to the sufficiency of the reserves or the solvency of the company. There is no federal policy to tax discriminatorily a life insurance company whose reserves may be deficient or depleted. Life insurance companies as a class are favored, particularly in Section 203 of the Act which allows a deduction from gross·income of "an amount equal to 4 per centum of the mean of *the reserve funds required by law* and held at the beginning and end of the taxable year." If the law, meaning the State law, requires assets to be tied up in a reserve for policies, this deduction of four percent is allowed, probably, to offset a loss of interest by reason of the character of investment usually required for reserves. If the reserve required by the State is one hundred percent of the full actuarial reserve, a greater deduction from gross income is obtainable than when only fifty percent is required. The tax officer is bound to see that the deduction claimed is based on reserves "required by law", as contrasted with voluntary reserves sought to be used as a basis of deduction. He is also concerned to examine the reserves under Section 201 to be sure the taxpayer is a life insurance company at all, for that Section defines a life insurance company as one whose reserve funds held for the fulfillment of its life insurance and annuity contracts comprise more than 50 percentum of its total reserve funds. The company, if doing other business than life insurance and annuity, and setting up reserves for this other business, must have the major portion of its reserves held for its life insurance and annuity contracts, in order to be taxed as a life insurance company. The Regulation, Art. 201, very reasonably imports from Section 203 the qualification "required by law", so that a voluntary increase in those reserves can not be used to make into a life insurance company a company which otherwise would not be such. The Regulation in Art. 203(a) (2)-1 is careful to exclude all things from the reserve "not required by express stat-

---

[1] McBride v. Acme Industrial Life Ins. Soc., 179 La. 701, 154 So. 741; Succession of Watson v. Metropolitan Life Ins. Co., 183 La. 25, 162 So. 790.

utory provisions or by rules and regulations of the insurance department of a State", and provides that "a company is permitted to make use of the highest aggregate reserve called for by any State * * * in which it transacts business, but the reserve must have been actually held." We find no provision in Statute or Regulation looking to a demand on the Commissioner's part for larger reserves that the State has required.

The reserves here set up are required to exist by State statute, but the amount to be set apart is not expressly fixed. The statutes require the Secretary of State as Insurance Commissioner to be furnished annually the details of its business by each life insurance company, and that he cause the policies to be valued, and ascertain "the reinsurance reserve" and "surplus" on a stated actuarial basis, and no company can issue policies until it is found to have complied with the laws of the State and is given a certificate to that effect. Act 114 Louisiana Laws 1898. Other provisions touching reserves occur in Act 148 Louisiana Laws 1936, but there is no express requirement that one hundred percent of the actuarial reserve be set apart. Yet the purpose to have the policies protected by a reserve is evident, and the "surplus" of the company can be estimated only after ascertaining and deducting from assets full reserves. The laws certainly authorize the Secretary to require what he thinks are adequate reserves to be set apart, and an announced and enforced requirement on his part which is applicable to petitioner and all like insurance companies for the tax year establishes a "reserve required by law" within the meaning of the Statute and Regulation. It ought to be so recognized.

We are asked to review and overrule our decision in Commissioner v. W. H. Luquire Burial Ass'n, 5 cir., 102 F.2d 89, that contracts for burial benefits at death are a form of life insurance; since it appears that petitioner's insurance contracts were in an undisclosed amount of that sort. We are assured that the burial benefits contracts all had a cash measure of some sort, as they did in the Luquire case. We see no reason to doubt our former conclusion that they are a form of insurance against death.

The judgment of the Board of Tax Appeals is reversed and the cause remanded for a recomputation of the taxes in accordance with this opinion.