**MOTHE BURIAL BEN. LIFE INS. CO. v. FONTENOT, Acting Collector of Internal Revenue.**

**No. 404 Civil Action.**

District Court, E. D. Louisiana, New Orleans Division.

Sept. 28, 1942.

P. M. Flanagan and George R. Blue, both of New Orleans, La., for plaintiff.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe and Leon F. Cooper, Sp. Assts. to Atty. Gen., and Herbert W. Christenberry, U. S. Atty., and Robert Weinstein, Asst. U. S. Atty., both of New Orleans, La., for defendant.

BORAH, District Judge.

Plaintiff taxpayer is suing for a refund on the payment of taxes assessed against it for the years 1934 and 1935. The petition presents a single question. That question is whether or not, in view of the manner in which plaintiff computed its reserves for the years 1934 and 1935, the plaintiff is entitled to be classified as a life insurance company for the purpose of reporting its income tax liability for those particular years.

### Findings of Fact.

The stipulated statement of facts, which is hereby adopted as the Findings of Fact of this court, is as follows:

1. The plaintiff is a corporation organized under the laws of the State of Louisiana on or about August 17, 1932, and has its principal office at New Orleans.

2. Article II of its charter reads as follows: "Article II. The object and purposes of this corporation shall be to engage in and conduct the business of Industrial Life Insurance, and generally to do and perform any and all acts necessary or incidental to the proper conduct of said business, and to engage in any business or transactions which is now or may hereafter be permitted by law to Industrial Life Insurance Companies."

3. The plaintiff was authorized by the Secretary of the State of Louisiana as Ex-officio Insurance Commissioner to transact its appropriate business of industrial life insurance in the State of Louisiana in accordance with the laws thereof. Plaintiff has not engaged in any other business but that authorized by the Insurance Commissioner of the State.

4. Representative copies of policy contracts issued or written by the plaintiff during the years 1934 and 1935 are marked Exhibit A and Exhibit B and made part of the stipulation.

5. On or about February 1, 1935, the plaintiff filed with the Louisiana Insurance Department a statement of its business as of December 31, 1934, on the conventional form of annual statement required by statute to be filed by insurance companies, and on or about February 1, 1936, the plaintiff filed such a statement on such form of its business as of December 31, 1935. On these annual statements filed by the plaintiff with the Insurance Department there were shown, as "Reserves for burial benefits", the amounts of $2,703.31 and $3,743.94 respectively. The amounts of these reserves had not been computed by the actuary of the Insurance Department of the State of Louisiana nor were they computed upon the basis of the so-called "Actuaries or combined experience table of mortality" with compound interest at four per cent per annum nor were they computed upon the basis of the so-called "American experience table of mortality" with compound interest at four per cent per annum. The reserves claimed by the plaintiff are those which the plaintiff computed as being three per cent of the cost to the company on business written in all prior years which remained in

force on the last day of each taxable year upon the advice of Emile Bienvenu, Chief Examiner of the Insurance Department of the State of Louisiana.

6. The amount of $2,703.31 for the year 1934 and the amount of $3,743.94 for the year 1935, which the plaintiff designated as "Reserve for burial benefits", were not represented by any particular assets especially set aside "earmarked" or designated as comprising such reserves, but in plaintiff's opinion they were being maintained as actual reserves.

7. The Secretary of the State of Louisiana did not make a valuation of the policies issued or written by the plaintiff up to January 1, 1935, until January, 1937.

8. In January, 1937, the Chief Examiner of the Insurance Department of the State of Louisiana advised the plaintiff by telephone that he had valued the policies written by the plaintiff in years prior to December 31 1935, and in force on December 31, 1936, and that the reserves required by state laws. had been computed, and thereafter the plaintiff received the following quoted letters from the Chief Examiner of the Insurance Department of the State of Louisiana:

"Emile Bienvenu, C. P. A.
"Chief Examiner Insurance Department
"State of Louisiana
"Whitney Bank Building  New Orleans
"November 26, 1937
"Annual Valuation of Policies of Industrial Life Insurance Companies
as Provided by Law
"Dear Sirs:

"In accordance with the provisions of Act 114 of 1898 you are directed to make a valuation of your policies as of December 31, 1937 on the basis of the American Experience Table of Mortality with interest at 4%. This should be completed as soon as possible after the close of the year.

"Blanks for the purpose of submitting your tabulation to this Department are now available at this office without cost to you. Please call here for the necessary number of sheets you will require.

"The computation of your Reserves will be made by the Actuaries for this Department.

"Very truly yours,
"(Sgd.)   Emile Bienvenu
"EB:RL               Chief Examiner"

"Emile Bienvenu, CPA
"Chief Examiner Insurance Department
"State of Louisiana
"Whitney Bank Building
"January 9, 1939
"Mothe Burial Benefit Life Ins Co.,
"619 Seguin St.,
"New Orleans, La.
"Dear Sirs:

"We have computed the reserve of your company as of 12–31–38 with the following results.

"The total insurance at the close of the year was 2,929 policies amounting to $379,-652.00. The amount of insurance in force subject to reserve is 1,633 policies amounting to $230,983.00. The total amount of reserve is $7,411.47.
"Very truly yours,
"(Sgd.)   Thomas F. Bienvenu
"TFB:RL     Assistant Chief Examiner"

The computation of the plaintiff's reserve contained in the foregoing letter dated January 9, 1939, was the first written computation of such reserve made by the Secretary of State of the State of Louisiana since the plaintiff's organization.

9. During the year 1934 the plaintiff's gross income, from all sources, was $8,-930.38, of which $8,471.65 represented premiums received, $413.73 interest received on loans, notes, etc., and $45 interest received on tax-exempt bonds. During the year 1935 the plaintiff's gross income, from all sources, was $11,421.11, of which $10,-890.95 represented premiums received, $485.16 interest received on loans, notes, etc., and $45 interest received on tax-exempt bonds.

10. The total insurance written or issued by the plaintiff up to January 1, 1934, which was in force on December 31, 1934, amounted to $56,950.80. The total insurance written or issued by the plaintiff up to January 1, 1935, which was in force on December 31, 1935, amounted to $112,983.

11. At December 31, 1933, there was set up in the plaintiff's books an account entitled "Reserve for burial benefits" in the amount of $600.86, which was eliminated from the books on December 31, 1934, on which date the plaintiff set up in its books an account entitled "Policy reserve" in the amount of $2,703.31. On December 31, 1935, the "Policy reserve" account was increased (in the amount of $3,743.94 which

is the reserve for the year 1935 hereinbefore mentioned) to $6,447.25.

12. A summary of the balance sheets of the plaintiff at the end of each of the years 1933, 1934 and 1935, shows assets and liabilities as follows:

### Balance Sheets

|  | 1933 | 1934 | 1935 |
|---|---|---|---|
| **Assets** | | | |
| Cash | 1,753.02 | 5,660.95 | 12,051.59 |
| Notes Receivable | | | |
| (Mortgage) | 7,000.00 | 6,000.00 | 3,000.00 |
| Investments | 1,000.00 | 1,000.00 | 2,010.00 |
| Total Assets | 9,753.02 | 12,660.95 | 17,061.59 |
| **Liabilities** | | | |
| Salaries Payable | | | 500.00 |
| Reserve for Burial | | | |
| Benefits | 600.86 | 2,703.31 | 6,447.25 |
| Capital Stock | 10,000.00 | 10,000.00 | 10,000.00 |
| Surplus | (847.84) | (42.36) | 114.34 |
| Total liabilities | 9,753.02 | 12,660.95 | 17,061.59 |

13. On or about May 18, 1939, the plaintiff received the following letter from the Chief Examiner of the Insurance Department of the State of Louisiana:

"Emile Bienvenu, C.P.A.

"Chief Examiner Insurance Department "State of Louisiana

"Whitney Building New Orleans, La.
"Thomas F. Bienvenu, C.P.A.
"Assistant Chief Examiner

"May 18, 1939

"Mothe Burial Benefit Life Insurance Co.,
"619 Seguin Street
"New Orleans, La.

"Attn: Mr. Chas. Gerrets

"Dear Sirs:

"This Department has computed the Reserves for your company for the year 1935–1936–1937 with the following results:

"December 31, 1935............................ $1,889.69
"December 31, 1936............................ 4,987.25
"December 31, 1937............................ 6,882.40

"If we can give you any further information in this matter, please feel free to call on us.

"Very truly yours,

"(Signed) Thomas F. Bienvenu
"TFB:RL Assistant Chief Examiner"

14. If called as a witness, W. E. Groves, an actuary, would testify that from all the data and information available to him, which, however, was not complete, he estimates that the reserves required by the laws of the State of Louisiana, computed actuarily, at the end of the year 1934, would be less in amount than the amount of $2,703.-

31 shown in the account in plaintiff's books entitled "policy reserve".

15. The plaintiff admits and agrees that under no circumstances is it entitled to receive or have judgment for the amount of $21.95, representing the income tax reported in its income tax return for 1934 and paid on March 7, 1935, for the reason that the recovery thereof is barred by the statute of limitations since the claim for refund of 1934 income taxes was not filed until May 12, 1938, which was more than three years after the income tax return was filed on March 7, 1935.

16. On March 7, 1935, the plaintiff filed a "Corporation Income and Excess-Profits Tax Return" for the calendar year 1934, reporting net income of $204.62 and a tax liability of $21.95, which the Commissioner of Internal Revenue duly assessed and which the plaintiff paid to the defendant, as Collector of Internal Revenue, on March 7, 1935. In computing the net income for 1934 reported in this return, $204.62, the plaintiff deducted the sum of $2,703.31, hereinbefore mentioned, as a reserve under the heading of "Other deductions".

17. After investigation, the Commissioner of Internal Revenue increased the plaintiff's net income in the amount of $2,703.31 and, in April, 1937, assessed the plaintiff additional, or deficiency, income taxes for the year 1934 in the sum of $371.71 together with interest thereon in the amount of $46.13. The increase in the plaintiff's net income, and the resulting deficiency assessment, were due to the disallowance by the Commissioner of the deduction of $2,-703.31 taken by the plaintiff in its 1934 return as "policy reserve". The deficiency tax of $371.71 and $46.13 interest, totaling $417.84, was paid by the plaintiff to the defendant as Collector of Internal Revenue on April 16, 1937.

18. On May 12, 1938, the plaintiff filed a claim for refund of $439.79 total income taxes and interest thereon paid for the year 1934. The contention in the claim is that the plaintiff is entitled to classification for income tax purposes as a life insurance company for the year 1934 and that it had no income subject to tax in that year.

19. On January 18, 1936, the plaintiff filed a "Corporation Income and Excess-Profits Tax Return" for the calendar year 1935, reporting net income of $178.65, and a tax liability of $18.38, which the Commissioner duly assessed and which the plain-

tiff paid to the defendant as Collector on January 18, 1936. In computing the net income for 1935 reported in this return, $178.65, the plaintiff deducted the sum of $3,743.94, hereinbefore mentioned, as a reserve under the heading of "Other deductions".

20. After investigation the Commissioner increased the plaintiff's net income in the amount of $4,243.94, and, in April, 1937, assessed the plaintiff additional or deficiency income taxes for the year 1935 in the sum of $583.54, together with interest thereon in the amount of $37.40. The increase in the plaintiff's net income, and the resulting deficiency assessment, were due to the disallowance by the Commissioner of the deduction of $3,743.94 taken by the plaintiff in its 1935 return as "policy reserve" and also the Commissioner's disallowance of a deduction in the amount of $500 for accrued salaries to a corporate officer. The deficiency tax of $583.54 and $37.40 interest, totaling $620.94, was paid by the plaintiff to the defendant as Collector on April 16, 1937.

21. On May 12, 1938, the plaintiff filed a claim for refund of $639.32 total income taxes and interest thereon paid for the year 1935. The contention in the claim is that the plaintiff is entitled to classification for income tax purposes as a life insurance company for the year 1935 and that it had no income subject to tax in that year.

22. On October 18, 1938, the Commissioner advised the plaintiff, by registered letter, that both of the claims for refund hereinbefore referred to were disallowed.

### Discussion

In Commissioner of Internal Revenue v. W. H. Luquire Burial Association Company, Inc., 102 F.2d 89, the Circuit Court of Appeals for this, the Fifth Circuit, held that a corporation issuing burial contracts similar to those issued by the plaintiff is a life insurance company. But the question in the present case is not whether the plaintiff is or was a life insurance company, but whether it was a life insurance company which was entitled in the years 1934 and 1935 to report for income tax purposes in accordance with Sections 201 to 203, inclusive, of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, pages 729, 730. Plaintiff contends that this question should be answered in the affirmative, and cites the recent case of Lamana-Panno-Fallo Industrial Ins. Co., Inc., v. Commissioner of Internal Revenue, 5 Cir., 127 F.2d 56, 59, in support of its contentions. On the other hand, the Government contends that the mere fact that the plaintiff corporation is a life insurance company is by no means decisive, and that unless it maintained reserves as defined in Section 203(a) (2) of the Revenue Act of 1934, 26 U.S.C.A. Int. Rev.Acts, page 731, in the years 1934 and 1935, it is not entitled to report for income tax purposes for those years under Sections 201, 202 and 203 of the Act. This being the issue between the parties, consideration will now be given to the Lamana case, supra, on which plaintiff relies.

In the Lamana case, as in the case at bar, the taxpayer was a Louisiana corporation. The years in controversy were 1936 and 1937 and the applicable statutes were those provisions of the Revenue Act of 1936 which are identical with those of the 1934 Act which are involved in the pending case. The court there found that companies like the petitioner therein, incorporated to do an industrial insurance business, were not, prior to a decision of the Louisiana Supreme Court in the year 1935, McBride v. Acme Industrial Life Ins. Soc., 179 La. 701, 154 So. 741, and Succession of Watson v. Metropolitan Life Ins. Co., 183 La. 25, 162 So. 790, considered to be under the reserve requirements applicable to other life insurance companies, and did not set apart such reserves; that the industrial companies did not have assets sufficient to set up full reserves to cover their outstanding policies and if, as a result of the decision aforementioned, they were required to set up such reserves, the Secretary of State (being ex-officio insurance commissioner) would have felt compelled in 1936 to have denied them certificates to do business and to have put them all into receivership. That under these circumstances the Secretary felt that he had discretion as to the amount of reserves necessary and therefore required the companies to set apart forty per cent of the full actuarial reserve proper to their policies in 1936, fifty percent in 1937 and ten per cent more each year until a reserve of one hundred per cent was accumulated. This was a rule and regulation to which these companies were required to adhere and this procedure was followed and understood. The petitioner therein did set apart forty per cent of the actuarial reserve thus required for its policies in 1936 and fifty per cent in 1937, and for each year received from the Secretary a certificate certifying

that it had complied with all the requirements of the state law applicable to said company and that it was authorized to transact its appropriate business of industrial life insurance in Louisiana.

On the basis of these facts the Government contended that since the whole amount of the actuarial reserve had not been set apart, the reserves were not those required by the federal statutes and regulations. In rejecting this contention and in holding that the reserve was sufficient to satisfy the statute and the regulations, the court used this pertinent language: "We are of opinion that the Revenue Act, and Regulation 94 construing it, do not concern themselves with the sufficiency, but only with the character of the reserves of insurance companies. It is not the function of the Commissioner to review the decision of the State insurance department as to the sufficiency of the reserves or the solvency of the company. * * * The tax officer is bound to see that the deduction claimed is based on reserves 'required by law', as contrasted with voluntary reserves sought to be used as a basis of deduction. * * *"

From the foregoing it is apparent that in the Lamana case the reserves had been computed actuarily and in accordance with the state law, although only a portion of them had been set apart, while in the instant case they were not. In view of the court's holding that the Revenue Act and the Regulations concern themselves only with the "character" of the reserves, and that the deductions cannot be based upon voluntary reserves sought to be used as a basis of deduction, it is plain that plaintiff can derive no comfort from this decision, but that on the contrary it fully supports the Government's contention that regardless of the amount that has been set up on the plaintiff's books as a reserve, it was not computed actuarily and in accordance with state statutes. It is not the reserve "required by law" but is a "voluntary reserve" which does not meet the requirements of the Internal Revenue Laws.

### Conclusions of Law.

1. In the years 1934 and 1935, the plaintiff corporation was not a life insurance company which was entitled to report its income for those years for income tax purposes under Sections 201 to 203, inclusive, of the Revenue Act of 1934.

2. In the years 1934 and 1935, the plaintiff corporation did not compute its reserves in accordance with the laws of Louisiana and the Internal Revenue Statutes, and, therefore, it is not entitled to classification as a life insurance company that is entitled to report its income for those years under Sections 201 to 203, inclusive, of the Revenue Act of 1934.

3. In the years 1934 and 1935, the plaintiff corporation set up reserves that were computed upon the basis of the cost to it of the insurance written and in force at certain dates, whereas the statutes of Louisiana required that the reserves be computed upon an entirely different, actuarial basis, and therefore since the plaintiff did not maintain the reserves required by law it is not entitled to report its income for the years 1934 and 1935 for income tax purposes as a life insurance company under Sections 201 to 203, inclusive, of the Revenue Act of 1934.

4. Even though the plaintiff corporation may have been a life insurance company in 1934 and 1935, it was not entitled to report its income for those years as such under Sections 201 to 203, inclusive, of the Revenue Act of 1934, because in those years it did not maintain reserves required by law.

5. A life insurance company to be entitled to classification as such for the purpose of reporting its income for income tax purposes must be a life insurance company which computes and maintains its reserves in the taxable year in the manner required by law, and the plaintiff corporation did not compute and maintain such reserves in the years 1934 and 1935.

6. The Commissioner of Internal Revenue has correctly assessed the amount of Federal income taxes due from the plaintiff for each of the years 1934 and 1935, and the plaintiff has not overpaid its income taxes for either of said years.

7. The income taxes sought to be recovered in this action were properly, correctly and lawfully determined and assessed by the Commissioner of Internal Revenue and legally collected from the plaintiff by the defendant and, therefore, the plaintiff's complaint must be dismissed with the costs herein assessed against the plaintiff.

8. On the facts and the law, the judgment of the court must be against the plaintiff and in favor of the defendant herein.

The Clerk is instructed to enter judgment accordingly.