## JOHNSON v. LIFE INS. CO. OF VIRGINIA.

### No. 16426.

Court of Appeal of Louisiana. Orleans.
June 22, 1936.

John T. Charbonnet, of New Orleans, for appellant.

Eug. J. McGivney and Solomon S. Goldman, both of New Orleans, for appellee.

JANVIER, Judge.

This is a suit on a policy of life insurance. On December 11, 1933, the policy lapsed because of nonpayment of premiums. The insured died on February 17, 1935. The policy, originally issued in 1902, had lapsed in 1919 and had been reinstated by defendant company.

Act No. 193 of 1906, enacted nearly four years after the policy had been originally issued, provides, in part, that:

"No policy of life or endowment insurance (other than a term policy for twenty years or less) issued by any legal reserve life insurance company on or after January first, nineteen hundred and seven, after being in force three full years shall by its terms lapse or become forfeited by the non-payment of any premium, or any note therefor, or of any loan on such policy or of any interest on such note or loan. The reserve on such policy computed according to the Standard adopted by said company, together with the value of any dividend additions upon said policy, after deducting any indebtedness to the company and one-fifth of the said entire reserve shall upon demand with surrender of the policy be applied as a surrender value as agreed upon in the policy, provided that if no other option expressed in the policy be availed of by the owner thereof, the same without any further act on the part of the owner of the policy, shall be applied to continue the insurance in force at its full amount including any outstanding dividend additions less any outstanding indebtedness on the policy, so long as such surrender value will purchase non-participating temporary insurance at net single premium rates by the standard adopted by the company, at the age of the insured at the time of lapse or forfeiture." Section 2.

It is contended, on behalf of plaintiff, that the reinstatement in 1919 constituted the issuance of a new contract of insurance and that, since this new contract was made after the enactment of the act of 1906, the new contract was affected·by the provisions of that statute. If the policy is controlled by that statute, then it was still in effect at the time of the insured's death, because it is conceded that at the time of the lapse on December 11, 1933, there had accumulated a reserve, which, if applied in accordance with the said statute as interpreted in Succession of Watson v. Metropolitan Life Ins. Co., 183 La. 25, 162 So. 790, would have "carried" the policy in full coverage until—and, in fact, substantially beyond—the time of the death of the insured.

The effect of our decision in Clark v. Life Insurance Company of Va., 160 So. 461, is that the act of 1906 has no application to policies issued prior to its enactment. So that the question upon which this case turns is whether the "reinstatement" in 1919 was, in fact, the continuance in force of a policy issued prior to the effective date of the act and, therefore, not affected by that act, or whether it constituted the issuance of a new contract subsequent to the act and, therefore, affected by its provisions.

The First city court of New Orleans, in which the litigation originated, viewing the contract as merely the continuance in force of the original policy, unaffected by the act of 1906, rendered judgment for defendant.

A reading of the many cases, none of which is identical in point of fact, but many of which present situations quite similar to that which now confronts us, renders inevitable the conclusion that the case is confined within the very narrow limits of the question of whether there is any distinction between the reinstatement of a policy, to which reinstatement the insured is entitled as a matter of right, and a so-called reinstatement to which the insurer may consent even though there is no right whatever in the insured to insist thereon.

That this policy was absolutely "dead" prior to the reinstatement of 1919, there can be no doubt. Condition No. 3 provides that, in the event of failure to pay any premium "and in event of a failure to perform this duty (payment of premium)

within four weeks from the date on which said premium was due, this policy shall thereupon become void." • Similarly, condition No. 5 states that:

"If any premium shall not be paid according to the terms hereof, this policy shall be void, and all premiums paid hereon shall be forfeited to the Company, except as hereinafter provided. And it is ·agreed that the foregoing provision, which avoids the policy in case any premium shall be overdue, shall not be considered in any respect waived by any act of grace by· the Company in the acceptance of overdue premiums upon this or any other policy. * * *"

The words "except as hereinafter provided" cannot, in this instance, be considered as having furnished the breath which kept the policy alive for two reasons:

(1) Because they referred, not to the continued existence of the policy itself, but to the right of the insured, within a certain limited time, to apply the then accumulated réserve^ to other purposes; and,

(2) Because within that limited time the insured did not make request for the application of the said reserve to any of those other purposes and, therefore, under the terms of the policy itself, even that reserve was "forfeited to the company." Thus, on the day of reinstatement in 1919, there was, under the policy, no right whatever in the insured to insist on a reinstatement. The policy was absolutely "dead." Nor was there any law applicable thereto under which it was given further life, or on which the insured could have depended to force the insurer to recognize any claim of the insured for surrender value, reinstatement, paid-up insurance, or any other value of any kind or nature whatsoever. The contractual or statutory rights of the insured were not one iota greater because of the fact that he had been a former policyholder than they would have been had he never even heard of the existence of the insurer. In fact, as we have stated, there were no such rights of any kind. It thus follows that the reinstatement of the policy which is now sued on resulted from new negotiations and did not result from any pre-existing obligation of the insurer.

But counsel for defendant maintain that "the fact that the policy sued upon in this case contained no provision for revival or reinstatement is wholly immaterial." They cite Business Men's Assurance Company v. Scott (C.C.A.) 17 F.(2d) 4, 6, in which the court said:

"The defendant contends that the reinstatement was not a restoration of the old policy in full force and effect, but was a new contract, and that, that contract not having been in force for a full year, the insurer was not precluded from setting up the defense of suicide. We cannot agree with this contention. The payment of the premium after the due date did not create a new contract of insurance, and had the effect simply of restoring the old contract. The only condition was that the company would not be liable for any accident occurring between the due date of the premium and the time it was paid. The insurer was in no better position to defend than it would have been had the suicide occurred prior to the failure to pay the premium and after the lapse of the first policy year."

But in that case the policy contained a provision for reinstatement, and we cannot agree with counsel in their view that whether or not the former policy contained such conditions is immaterial.

The distinction between the reinstatement of a policy, where the policy itself contains terms upon which the reinstatement may be insisted upon and a so-called reinstatement where the policy contains no such terms and where the reinstatement is purely voluntary on the part of the insurer, is recognized in Couch's Cyclopedia of Insurance Law, vol. 6, § 1375, in which appears the following:

"The performance of specific conditions in a life policy for reinstatement after default in payment of premiums revives the original policy, or continues it in force and does not create a new contract."

It is true that the author does not state expressly that, where the reinstatement does not result from any right which was granted in the original contract, the reinstatement shall be treated as a new contract, but he does expressly state the converse of that rule in the above-quoted language. If it had been his view that any reinstatement should revive the original policy, surely he would not have so obviously recognized the distinction.

And it is true, also, that in Cooley's Briefs on Insurance (2d Ed.) vol. IV, p. 3800, appears the following:

"The effect · of a reinstatement is not, generally, the making of a new contract, •

but it merely cancels the forfeiture, leaving the original contract in force." ·

But Mr. Cooley obviously fails to note the distinction between those policies which contain stipulations under which the reinstatement may be insisted upon and those in which there are no such stipulations.

Mr. Joyce, in his work entitled The Law of Insurance (2d Ed.) vol. 3, p. 2416, § 1276–d, recognizes the distinction, as is evidenced by the following statement:

"Where by the failure ·of insured to pay premiums when due the policy is ipso facto forfeited, if the policy is subsequently reinstated with the consent of the insurer, it becomes a ·new contract as if then for the first time issued."

It is true that later he states that the reinstatement is, in effect, the original contract, "where no different terms are agreed upon"; but each of the cases cited by him in support of this statement is a case in which there was a right to reinstatement.

In Ætna Life Insurance Company v. Dunken, 266 U.S. 389, 45 S.Ct. 129, 133, 69 L.Ed. 342, the Supreme Court of the United States considered a situation which presented a problem somewhat similar to that before us, but there the policy did contain a provision under which the insured could insist upon the issuance of the "new" or "converted" policy upon which he did insist and upon which the suit was based. It was contended, on the one hand, that the rights of the parties should be controlled by the laws of the state in which the original policy had been issued, and, on the other hand, that the "converted" policy should be considered as a new contract controlled by the laws of the state in which it had been converted. The Supreme Court gave consideration to the question of whether the "converted" policy was the result of rights which had existed under the former policy and said:

"It was issued not as the result of any new negotiation or agreement but in discharge of pre-existing obligations. It merely fulfilled promises then outstanding; and did not arise from new or additional promises. The result in legal contemplation 'was not a novation but the consummation of an alternative specifically accorded by, and enforceable in virtue of, the original contract. If the insurance company had refused to issue the second policy upon demand, the insured could have compelled it by a suit in equity for specific performance."

Had the court not felt that a different result would have been reached had there been no right in the insured to insist on the issuance of the converted policy, surely it would not have taken the pains to discuss and to explain the distinction in the legal results made necessary by the difference in facts.

In International Life Insurance Company v. Mowbray, 22 F.(2d) 952, 954, is found another case in which the court (United States Circuit Court of Appeals, 7th Circuit) carefully .analyzed the respective rights of the parties to the original life insurance contract and then held that, since there was no unqualified right in the insured to force a reinstatement and since the insurer had discretion as to whether or not it would reinstate the policy, the reinstated policy should be considered as a "new contract," and, therefore, affected by the laws of the state in which the said reinstatement had taken place. As evidence of the fact that the case turned upon the "narrow and precise question" of "whether the * * * contract is to be regarded as a separate one or as a continuation of the old one," we quote the following from that decision:

"Whether the second contract was issued in pursuance of, and dependent for its existence upon, the express provision of the original contract, must be determined by an examination of the policy as well‾as the facts showing the circumstances under which the reinsurance occurred. In other words, did the assured have an unqualified right to be reinstated, or was such reinsurance or ·reinstatement the result of a new negotiation or agreement."

Counsel for defendant argue that the principle announced in the Mowbray Case has no similarity to that here involved and intimates that, as they read that decision, there was involved some question of conflict between the laws of the state in which the original policy had been written and the laws of ‘the state in which the reinstatement had been effected. But a careful review of that decision shows plainly that the principal point at issue was whether the new, or reinstated policy, constituted a new contract, or a continuation of the old, and the court held that it turned upon the very "narrow and precise question" to which we have referred.

The views expressed by the United States Circuit Court of Appeals in Tatum

v. Guardian Life Insurance Company, 75 F.(2d) 476, 98 A.L.R. 341, are not contrary to those found in the two cases just above cited on the question now under discussion. On the contrary, the Tatum Case holds squarely that, whether or not the reinstated contract is a new one or a continuation of the old depends upon whether there was in the old any right under which the insured might compel the issuance of the new or reinstated policy. It is true that in the Tatum Case the court expressed dissatisfaction with the conclusions reached in the Mowbray Case, but this dissatisfaction was based on the view that, in the Mowbray Case, the first policy should have been interpreted as giving to the insured the right to insist on the issuance of the new contract. In the Mowbray Case the original policy contained a provision that, in the event of forfeiture, reinstatement might be insisted upon by the insured "upon evidence of health satisfactory to the Company," and in that case the court held that these words did not create in the insured the unqualified right to insist on reinstatement. The court in the Tatum Case felt that the words in the policy considered in the Mowbray Case should have been construed as giving to the insured the right to insist on reinstatement. The view taken in the Tatum Case was that a provision for reinstatement on the production of evidence of insurability satisfactory to the insurer should be reasonably construed and that, where there is such a provision, the insurer has not the arbitrary right to refuse reinstatement.

The Supreme Court of the United States, in Mutual Life Insurance Company of New York v. Liebing, 259 U.S. 209, 42 S.Ct. 467, 66 L.Ed. 900, considered a question resembling the one at issue, and we find there a discussion which shows plainly that the narrow question involved in these cases depends for determination upon whether, either from the original contract, or from statute, the insured had a right to demand the issuance of the second contract. In that case the court held the second contract to be a new one because in the first there was no "discretion" reserved to the insurer to refuse to make the new one.

Again, in New York Life Insurance Company v. Dodge, 246 U.S. 357, 38 S. Ct. 337, 62 L.Ed. 772, Ann.Cas.1918E, 593, the contract sued on was held to be a new one. The court said there that the original policy "certainly imposed no obligation upon the company to make * * * a loan," and that, therefore, the plaintiff could not "claim anything upon the theory that the loan contract actually consummated was one which the company had legally obligated itself to make upon demand."

Defendant contends that two other cases relied upon by plaintiff, as authority for the view that a new contract resulted from the reinstatement, in fact sustain the contention of defendant. These cases are Alper v. New York Life Insurance Company (D.C.) 41 F.(2d) 956, 957, and Wastum v. Lincoln National Life Insurance Company (C.C.A.) 12 F.(2d) 422, 425. But counsel is wrong in this. In the Alper Case the court held that the reinstatement constituted a new contract, saying, with reference to the original policy, that:

"The contract was at an end. Liability under it had wholly ceased. The policy could be revived only by consent of the defendant. By virtue of the terms of the original policy, a new written application was required, together with 'evidence of insurability satisfactory to the company,' before reinstatement could be made. A new contract was possible only as a result of new negotiations."

In the Wastum Case the court held the old policy to be entirely at an end and said that, where such policy has lapsed, "after it has ceased to be in force, because of nonpayment of the premium, an agreement for a reinstatement of the policy is a new contract."

The cases involving accident or fire insurance policies which are renewed from year to year on an annual premium basis have no application. Counsel for defendant point this out and show that the distinction is that, in cases of life insurance, the policies are usually written not for a single year, but constitute contracts existing for life, based on a "level" premium fixed on the basis of the age of the insured at the time of the original issuance, and they argue from this that, in life insurance cases, it would be actuarially absurd and unsound to hold that the reinstatement constitutes a new contract, although the premium rate remains the same as that at which the original contract had been written many years before—in this case seventeen. It is quite true that in many cases the distinction between the

two classes of contract, those for a year and those for life, has been recognized. In New York Life Insurance Company v. Statham, 93 U.S. 24, 30, 23 L.Ed. 789, the Supreme Court of the United States said:

"We agree with the court below, that the contract is not an assurance for a single year, with a privilege of renewal from year to year by paying the annual premium, but that it is an entire contract of assurance for life, subject to discontinuance and forfeiture for non-payment of any of the stipulated premiums. Such is the form of the contract, and such is its character. It has been contended that the payment of each premium is the consideration for insurance during the next following year,—as in fire policies. But the position is untenable. It often happens that the assured pays the entire premium in advance, or in five, ten, or twenty annual instalments. Such instalments are clearly not intended as the consideration for the respective years in which they are paid; for, after they are all paid, the policy stands good for the balance of the life insured, without any further payment. Each instalment is, in fact, part consideration of the entire insurance for life. It is the same thing, where the annual premiums are spread over the whole life. The value of assurance for one year of a man's life when he is young, strong, and healthy, is manifestly not the same as when he is old and decrepit. There is no proper relation between the annual premium and the risk of assurance for the year in which it is paid. This idea of assurance from year to year is the suggestion of ingenious counsel. The annual premiums are an annuity, the present value of which is calculated to correspond with the present value of the amount assured, a reasonable percentage being added to the premiums to cover expenses and contingencies. The whole premiums are balanced against the whole insurance."

In Valenti v. Prudential Life Insurance Company, 71 F.(2d) 229, 234, the United States Circuit Court of Appeals for the Eighth Circuit recognized the distinction and said:

"This distinction we think holds good in the instant case. In ordinary life insurance agreements, where the insurance is against death from whatsoever cause, the expectancy of the insured is determined by mortality tables and interest rate, and a reserve is built up behind the premium charged, so that a fund may be accumulated for the payment of the loss when the expectancy is reached, and a value for extended insurance in case of default after the payment of a prescribed number of premium payments. Not so with accident insurance which is without any reserve or net value built up to meet each particular loss."

But, even though there may be a reason for making a distinction in premium rates between those policies which are issued for a year and renewable annually and in which the risk each year does not increase, and those policies issued on a level premium basis and in which, each year, the hazard grows greater, we know of nothing which would prevent an insurer from writing a contract of insurance on any premium basis satisfactory to it; and, if there was no obligation in the insurer to make the contract of reinstatement and yet it did so, the result, even if actuarially unsound and absurd, must be charged solely to the defendant itself. It was under no obligation to renew the policy; there was no right whatever in the insured to insist upon it and yet the defendant reissued the policy on the same premium basis as that which had previously been applied.

Counsel, citing Trapp v. Metropolitan Life Insurance Company (C.C.A.) 70 F. (2d) 976, 980, quotes the following:

"Under the terms of the policy, reinstatement restored the old policy and did not create a new one. [Citing cases.] Any other rule as applied to level premium life insurance would be legally unsound and actuarially absurd. It would disturb the basis for all calculations as to premiums and benefits, and give to those insured who defaulted and subsequently reinstated, a distinct advantage over those who paid their premiums as they fell due."

But that is a result of which the insured in the case at bar could not deliberately have taken advantage because, since he had no right to insist on reinstatement, by permitting his policy to lapse he assumed the risk of not being able to reinstate the policy at all. This was not true in the Trapp Case. It is true that a considerable advantage may accrue to those who permit their policies to lapse, if, between the date of the issuance of the original contract and the date of the subsequent reinstatement, legislation favorable to those who secure policies is enacted, because those enactments then attach to the policies subsequently issued, whereas they

do not attach to those policies held by other policyholders who have been regularly paying their premiums. But here, again, the result is chargeable solely to the willingness of the insurer to write the policy on the original basis after such legislation has been enacted because, as we have already said, the insured, in permitting the cancellation, ran the risk of not being able to obtain reinstatement. The insured was under no compulsion; it could not have been forced to reinstate the contract if it had not seen fit to do so.

The actuarial unsoundness and absurdity to which defendant points, and which we feel resulted solely from the voluntary assumption by the defendant of a risk at an unprofitable rate and subject to unfavorable legislation, probably causes to the insurer no more concern than is caused to the insured by a defendant where the policy provides that, in case of default, all premiums "shall be forfeited to the company."

Our interpretation of the status of this contract does not involve undue interference with the right of the insurer to freely contract. It may be argued that what is involved here is an agreement voluntarily and deliberately entered into, under which the parties have established between themselves the status of their contract and the laws applicable thereto; that the parties have, between themselves, agreed to reinstate a previously existing contract and not to inaugurate a new one, and that, since the parties have the right to freely contract, our view that they have not reinstated the old contract, but have, whether they wished to or not, inaugurated a new one, is, in effect, an interference with the right to freely contract. But this argument overlooks the fact that a question of public policy is involved, and that, where such is involved, the right to freely contract is circumscribed and controlled by that public policy. The public policy, as expressed in the act of 1906, is written into every new contract of insurance issued after the effective date of that statute.

If the parties could do what it is here contended that they have done and could contract for the reinstatement of a policy which, in itself, has no longer the breath of life, and could thereby avoid the effect of the prohibitory law of 1906, then we see nothing which would prevent their so contracting, even without reference to a previously existing contract. They could make a contract and declare their intention of having it interpreted and controlled under and by the laws in existence prior to 1906. Obviously they could not do this.

Plaintiff, for still another reason, contends that the act of 1906 should be read into this contract, and that is, that the case of Fisette v. Mutual Life Ins. Company, 162 La. 620, 110 So. 880, requires the interpretation that the word "issued" used in statutes of this kind should be interpreted to mean "reissued," or "reinstated." But we do not so read the Fisette Case, for there an insurer issued a policy of insurance which provided that the said policy should not be "established" until, within a fixed time, the insured had produced evidence of insurability. The defendant company contended that Act No. 227 of 1916 had no application because the policy had not been "issued," but had been "established," and the act of 1916 expressly referred only to policies which had been "issued." The Supreme Court held that the "establishment" of the policy was tantamount to issuance. But that situation, we feel, was entirely different and, in any event, both the issuance and the establishment were subsequent to the enactment of the statute on which the case depended.

For the reasons given, we feel that there should be judgment in favor of plaintiff in accordance with the terms of the policy.

It is admitted by defendant corporation that there had been accumulations as a result of which the face value of the policy was raised to $177.60 and that there has also been an additional dividend of 47 cents, making the total amount due thereunder $178.07. It is shown, however, without contradiction, that defendant company has a lien on the policy to the extent of $4.19, so that the total amount now due is $173.88.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff, Joseph Johnson, and against Life Insurance Company of Virginia, in the sum of $173.88, with legal interest from judicial demand and for all costs.

Reversed.