**AMF INCORPORATED, Plaintiff-Appellee,**

v.

**INTERNATIONAL FIBERGLASS COMPANY, INC., et al., Defendants-Appellants.**

No. 72–1188.

United States Court of Appeals, First Circuit.

Heard Oct. 2, 1972.

Decided Nov. 13, 1972.

C. Thomas Zinni, Boston, Mass., for appellants.

George W. McLaughlin, Boston, Mass., with whom Rogers, Hoge & Hills, New York City and Wardwell, Allen, McLaughlin & Skinner, Boston, Mass., were on brief, for appellee.

Before COFFIN, Chief Judge, and ALDRICH and CAMPBELL, Circuit Judges.

CAMPBELL, Circuit Judge.

The appellee, AMF, Incorporated (AMF), makes and sells the "Sunfish" sailboat, the name having been a registered trademark since 1959. Appellant Caccavaro was and is president and owner of International Fiberglass Company, Inc. ("Fiberglass") and of its successor corporation, the appellant International Boat Co., Inc. ("Boat"). In 1971, AMF sued Fiberglass for trademark infringement and unfair competition, its claim arising from Fiberglass' having made and sold, under the name "Funfish", a sailboat which resembled the Sunfish.

AMF's suit against Fiberglass was terminated by the entry of a final decree on December 23, 1971 to which all parties consented.[1]

On May 10, 1972, AMF filed a contempt petition against Caccavaro and Fiberglass, and, later (when it learned that Boat had succeeded Fiberglass) against Boat, charging violations of the consent decree. After hearing, the district court found the appellants to be in contempt. It ordered Fiberglass and Boat, jointly and severally, to pay a fine of $1,000, and Caccavaro to pay a fine of $500, to AMF, to recompense it for loss of goodwill and costs of the proceeding. Caccavaro and Boat, but not Fiberglass, have appealed.

■ We affirm. The record fully supports the district court's findings that appellants had engaged in conduct which violated the terms of the decree.

There was evidence of advertising and representations associating appellants' boat (named, since entry of the decree, a "Viking") with the Sunfish.[2] The Viking was listed in a dealer's advertisement as a "Sunfish Class Sailboat". An ad, under the name of Boat, pictured a sailboat with the caption, "Ours is a Fish too!" Signs at the boat shows in New York and Boston read, "What's the price of Fish? High Priced Fish $4.10 lb. Our Fish $2.87 lb." Caccavaro said at a boat show that the Viking and Sunfish were identical and had interchangeable sails, and that the Sunfish people "have had a hard time finding the difference. . . ." A dealer advertised, "Compare the new Viking with other identical well known

1. The decree said, in pertinent part:

IT IS ORDERED that defendant, its agents, officers, servants, employees and attorneys and all persons in active concert or participation with them or any of them be and they are hereby permanently enjoined and restrained:

(1) from applying to or using in connection with the sale, advertisement or offering for sale of any boat or related product the notation FUNFISH or any other notation so similar to plaintiff's trademark SUNFISH as to be likely to cause confusion, mistake or deception;

(2) from applying to or using in connection with the sale, advertisement or offering for sale of any boat or related product the notation FUNFISH or any other notation so similar to plaintiff's trademark SUNFISH as to be likely to cause dilution of the distinctive quality of said trademark;

(3) from making any representation, expressly or by implication that plaintiffs' price for its said boat is supported under the fair trade laws or that the list price of defendant's boat is anything other than the price at which defendant sells it or that defendant's boat is exactly like or of the same quality as plaintiff's, or any other similar representation, and from making any other false representation whatsoever with respect to plaintiff's or defendant's boat;

(4) from referring in any manner to plaintiff's trademark SUNFISH in any advertising, promoting or selling of defendant's boat, except to identify plaintiff's boat without in any way describing defendant's boat as being of a SUNFISH class or being constructed like a SUNFISH.

2. In a Boston Sunday newspaper, Fiberglass was on two successive weeks listed as exhibiting the FUNFISH at Suffolk Downs. Appellants denied any connection with the advertisement, which would, of course, be an open and shut violation.

sailboards." There was evidence from which the district court could reasonably infer appellants' responsibility for dealers' advertisements.

■ The district court could conclude that such representations of identity and interchangeability of parts, and use of the words "fish" and "sunfish class", were intended and were likely to cause confusion and a dilution of the distinctive quality of the Sunfish trademark. They also violated express prohibitions in paragraphs (3) and (4).

While "fish" is a generic term, its use here was not innocent as appellants contend. Having been forbidden to use "Funfish", appellants can reasonably be found to have selected "fish" to convince buyers that the boat was still in essence a Sunfish at bargain prices. A party under injunction "must do more than see how close [it] can come with safety to that which [it was] enjoined from doing." Eskay Drugs, Inc. v. Smith, Kline & French Laboratories, 188 F.2d 430, 432 (5th Cir. 1951).

That appellants were representing the Viking boat to be exactly like the Sunfish—in violation of paragraphs (3) and (4) of the decree—was further shown by Caccavaro's letter to dealers, on Boat's letterhead, representing that Boat "began making the same boat" as a sailboat called "Sunfish" and that its price was "much less".

The evidence also supports the district court's finding that by advertising bogus "discounts" the appellants violated provisions of the decree relating to pricing.

■ The appellants may not, of course, now attack the terms of the decree. United States ex rel. Shell Oil Co. v. Banco Corp., 430 F.2d 998, 1001 (8th Cir. 1970); Hopp Press, Inc. v. Joseph Freeman & Co., 323 F.2d 636, 637 (2nd Cir. 1963); Kiwi Coders Corp. v. Arco Tool & Die Works, 250 F.2d 562, 568 (7th Cir. 1957). See also Maggio v. Zeitz, 333 U.S. 56, 68, 68 S.Ct. 401, 92 L.Ed. 476 (1948). They were bound to obey until the court modified the decree. Their afterthoughts about its wording are particularly inappropriate where they had consented to the terms. See United States v. Armour & Co., 402 U.S. 673, 681–682, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971).

Since the district court's findings are plainly supported in the record, we prefer to express no opinion on the merits of appellee's rather refined argument that Boat's appeal is moot in the absence of Fiberglass as a co-party appellant.

Affirmed. Double costs in favor of the appellee.